**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 27, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2023AP2204-CR**
**2023AP2205-CR**
**2023AP2206-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2023CM277**
**2023CM281**
**2023CM333**

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

JUNEAU COUNTY SHERIFF'S OFFICE,

    RESPONDENT,

  V.

ROSEANN M. REYES,

    DEFENDANT-APPELLANT.

APPEALS from orders of the circuit court for Juneau County: STACY A. SMITH, Judge. *Dismissed.*

Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In these consolidated appeals, Roseann Reyes appeals orders of commitment for treatment (incompetency) and for involuntary administration of medication ("the involuntary medication order").[1] She also appeals an order to provide emergency medical care and treatment ("the emergency medical treatment order"). Because we conclude that the issues are moot and that no exceptions to the mootness doctrine apply, we dismiss these appeals.[2]

## BACKGROUND

¶2 Reyes was charged in three separate misdemeanor cases with two counts of disorderly conduct and two counts of resisting an officer.

¶3 After meeting with Reyes in the Juneau County Jail, Reyes's attorney raised the issue of Reyes's competency to proceed. The circuit court ordered a competency examination and scheduled a competency hearing.

¶4 A competency report was filed by a forensic psychiatrist, who also testified at the hearing. The psychiatrist testified that Reyes had schizophrenia and

---

[1] Although a separate order for involuntary administration of medication was entered in each of the three underlying misdemeanor cases, for ease of reference, we refer to these orders collectively as the "involuntary medication order."

[2] These appeals were consolidated for briefing and disposition by an order dated December 1, 2023. *See* WIS. STAT. RULE 809.10(3) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted. These appeals were converted from a one-judge appeal to a three-judge appeal under WIS. STAT. § 752.31(3) and WIS. STAT. RULE 809.41(1).

2

had been treated in the past with monthly, long-acting antipsychotic injections which she was now refusing; that, due to her mental illness, Reyes lacked the capacity to understand the charges or court proceedings or to assist in her own defense; and that Reyes was "not capable of applying an understanding of the advantages or disadvantages of taking psychiatric medications" and "not competent to refuse medications" because she could not have a meaningful discussion about the need for medications or their advantages or disadvantages.

¶5     Also addressed at the hearing was a petition to provide emergency medical care and treatment filed by Juneau County Corporation Counsel on behalf of the Juneau County Sheriff's Office, with a letter from a physician assistant attached.   The petition alleged that Reyes was "gravely ill" with MRSA (Methicillin-Resistant Staphylococcus Aureus), which was "potentially life threatening" and could rapidly spread through the jail, and that Reyes refused to accept any care or treatment for her emergency condition.

¶6     Following the hearing, the circuit court issued an order of commitment for treatment in each of the three cases.  The court determined that Reyes was not competent but was likely to be restored to competency within 12 months if provided with appropriate treatment.  The court suspended the criminal proceedings, ordered Reyes committed to the Department of Health Services, and authorized the department to administer involuntary medication based on Reyes's dangerousness.   The court also granted the Sheriff's Office's petition for emergency medical care and treatment.

¶7     Reyes moved the circuit court to stay the involuntary medication order pending appeal, arguing that the order violated due process because the State failed to prove the four factors established in *Sell v. United States*, 539 U.S. 166

3

(2003).[3]  The court denied Reyes's motion for a stay.  In support of its ruling, the court referenced language from WIS. STAT. § 971.14(3)(dm)2. and a passage from *Sell*.[4]

¶8     This court granted Reyes's requests for temporary and continuing stays of the involuntary medication order pending appeal but denied a temporary stay and a supervisory writ as to the emergency medical treatment order.

---

[3] In *Sell v. United States*, 539 U.S. 166 (2003), the United States Supreme Court held that, before forcibly medicating a defendant to competency to stand trial in a criminal case, the State must show:  (1) an important government interest is at stake; (2) involuntary medication will significantly further that interest; (3) involuntary medication is necessary to further that interest; and (4) involuntary medication is medically appropriate. *Id.* at 180-81.

[4] WISCONSIN STAT. § 971.14(3)(dm)2. provides:

> [A] defendant is not competent to refuse medication … if, because of mental illness … and after the advantages and disadvantages of and alternatives to accepting the particular medication … have been explained to the defendant[:]
>
> .…
>
> The defendant is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness … in order to make an informed choice as to whether to accept or refuse medication ….

The passage from *Sell* states:

> A court need not consider whether to allow forced medication for [competency to stand trial], if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his [or her] health gravely at risk. [*Washington v. Harper*, 494 U.S. 210, 225-26 (1990).]  There are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds *before* turning to the trial competence question.

*Sell*, 539 U.S. at 181-82.

¶9      Twelve days after the circuit court issued its emergency medical treatment order, Juneau County Corporation Counsel filed a motion in circuit court requesting that the court vacate that order.  In an attached letter, the physician assistant reported that Reyes had completed her course of antibiotics, that she no longer had life-threatening health concerns, and that she was voluntarily treating her mental health as her psychiatrist prescribed.[5]  The court vacated the emergency medical treatment order as moot the same day the petition was filed.

¶10      Reyes appealed the involuntary medication order and the emergency medical treatment order.  Pertinent here, in their appellate briefing, the parties argue whether, in light of the circuit court order vacating the emergency medical treatment order, that issue is moot and, if so, whether a mootness exception applies.

¶11      After the parties filed their briefs, the State notified this court that the circuit court had found Reyes competent; that Reyes and the Juneau County District Attorney's office had thereafter resolved all underlying misdemeanor cases through a plea agreement; and that the circuit court had accepted Reyes's plea, sentenced her, and entered judgments of conviction.  Based on this notification, we issued an order directing Reyes and the State to file supplemental briefs addressing mootness solely as to the involuntary medication order, which they have done.

---

[5] The parties agree that Reyes took the antibiotics voluntarily, although Reyes asserts that she only did so when presented with the alternative of being administered them involuntarily. Reyes offers no support for this assertion other than the order for involuntary medication.

## DISCUSSION

¶12 The parties agree that, as to the involuntary medication order, the issue is moot; however, they dispute whether a mootness exception applies. Regarding the emergency medical treatment order, the parties dispute whether the issue is moot and, if so, whether a mootness exception applies. For the reasons that follow, we conclude that the issues are moot as to both orders and that no exception applies. Accordingly, we dismiss these appeals.

I. General Principles Governing Mootness

¶13 "An issue is moot when its resolution will have no practical effect on the underlying controversy." *Portage County v. J.W.K.*, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509. However, collateral consequences to a challenged order may render an appeal not moot if there exists a "'causal relationship' between a legal consequence and the challenged order." *Sauk County v. S.A.M.*, 2022 WI 46, ¶20, 402 Wis. 2d 379, 975 N.W.2d 162 (quoted source omitted).

¶14 "Mootness is a doctrine of judicial restraint." *Marathon County v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901. "Appellate courts generally decline to reach moot issues, and if all issues on appeal are moot, the appeal should be dismissed." *J.W.K.*, 386 Wis. 2d 672, ¶12. However, we may choose to address moot issues in "'exceptional or compelling circumstances.'" *Id.* (quoted source omitted). "There are several established exceptions under which this court may elect to address moot issues: (1) the issue[] [is] of great public importance; (2) the constitutionality of a statute is involved; (3) the situation arises so often a definitive decision is essential to guide the trial courts; (4) the issue is likely to arise again and should be resolved by the court to avoid uncertainty; or

(5) the issue is capable and likely of repetition and yet evades review." *Id.* (internal quotation marks and quoted source omitted).

## II. Involuntary Medication Order

¶15 As to the involuntary medication order, the primary issue on appeal is whether a court may order involuntary medication in a WIS. STAT. § 971.14 competency proceeding based on dangerousness and without applying the *Sell* factors.

¶16 Reyes argues that the circuit court could not base its involuntary medication order on dangerousness and was required to apply the *Sell* factors. In contrast, the State argues, as pertinent here, that *Sell* recognizes a court's authority to consider involuntary medication on dangerousness grounds in a competency proceeding; that the court's order was permissible under WIS. STAT. § 51.61(1)(g); and that our supreme court's opinion in *State v. Anthony D.B.*, 2000 WI 94, 237 Wis. 2d 1, 614 N.W.2d 435, confirms that § 51.61(1)(g) authorizes orders for involuntary medication for dangerousness when an individual is committed under WIS. STAT. ch. 971.

¶17 As noted, following the submissions of briefs in this appeal, the circuit court determined that Reyes had been returned to competency, the parties settled the underlying criminal cases, and Reyes was sentenced. In addition, as Reyes notes, because the involuntary medication order in this case was stayed and Reyes was never medicated, she is not subject to any costs associated with it and thus there is no collateral consequence of the involuntary medication order that would render the issue not moot. As a result, both Reyes and the State agree that issues related to the involuntary medication order are moot. However, Reyes

argues that the following three exceptions to the mootness doctrine apply: (1) the issue is of great public importance; (2) the issue occurs frequently and a decision is essential to guide circuit courts; and (3) the issue is likely to arise again and a decision of this court would alleviate uncertainty.

¶18 We conclude that the second and third exceptions do not apply. That is because after the parties submitted their supplemental briefs on mootness, this court decided *State v. N.K.B.*, 2024 WI App 63, 414 Wis. 2d 218, 14 N.W.3d 681, *review granted* (WI Feb. 12, 2025) (No. 2023AP722-CR), which resolves the issue presented here.[6]

¶19 Under facts not materially distinguishable from those here, the *N.K.B.* court concluded that neither *Sell*, WIS. STAT. § 51.61(1)(g), nor *Anthony D.B.* allows for the involuntary medication of a defendant who is ordered to be committed for restoration to competency based on that defendant's dangerousness, and that the circuit court is instead required to apply the *Sell* factors. *N.K.B.*, 414 Wis. 2d 218, ¶¶30-34, 45-46. Thus, contrary to Reyes's contentions, a decision on the merits in this moot case is not necessary to guide circuit courts or to alleviate uncertainty because there is already controlling precedent deciding the issue.

¶20 As to the first exception, whether the issue is of "great public importance," *J.W.K.*, 386 Wis. 2d 672, ¶12, we conclude that although the issue is

---

[6] In its initial and supplemental briefs, the State noted that the issue presented here was also before this court in *State v. N.K.B.*, 2024 WI App 63, 414 Wis. 2d 218, 14 N.W.3d 681, *review granted* (WI Feb. 12, 2025) (No. 2023AP722-CR), which was briefed and submitted for review prior to the instant case. We placed this case on hold while a decision was pending in *N.K.B.*

undoubtedly important, it is less so given the existence of controlling precedent addressing this very issue, precedent which the State and circuit courts must follow going forward. Therefore, we cannot conclude that the issue is of such great public importance that it requires our review, despite its status as moot.

¶21     In sum, given our opinion in *N.K.B.*, two of the three exceptions upon which Reyes relies do not apply, and the third does not provide the type of "exceptional or compelling circumstances" that would justify deviating from our usual practice of declining to reach moot issues. *Id.*[7]

III.  Emergency Medical Treatment Order

¶22     As noted, twelve days after the circuit court issued its emergency medical treatment order, corporation counsel petitioned the court to vacate the order, stating that Reyes had completed her course of antibiotics and had recovered from MRSA. The court vacated the order that same day and the State now argues that any issue regarding the emergency medical treatment order is therefore moot.

¶23     In response, Reyes argues that the issue is not moot because there may be collateral consequences as a result of the order. Specifically, she argues that she may be responsible for treatment fees as a result of the administration of the medication. *See S.A.M.*, 402 Wis. 2d 379, ¶¶24-25 (the "threat of potential

---

[7] We note that Reyes also challenges the involuntary medication order on the basis that the circuit court failed to properly apply Wis. Stat. § 971.14(3)(dm) or make the necessary findings that Reyes was not competent to refuse medication. The parties' supplemental briefs do not address whether any mootness exception pertains to this particular issue. We conclude that this issue is also moot and that no mootness exception applies.

collection actions to recoup the costs" associated with an order for medical care and treatment may be a collateral consequence rendering an issue not moot). In support of her argument, Reyes cites the Juneau County Jail's "Inmate Rules & Regulations," which, according to Reyes, states that inmates "'will be charged a $3.00 fee for each nurse visit & $5.00 fee to see the [physician assistant],'" that indigent individuals' accounts "'will be held in arears until [they] are able to make a payment,'" and that "'[m]oney placed in [their] account will then be deducted to pay [their] bill.'" Reyes provides a link to a website for these rules and argues that we may take judicial notice of them. *See* WIS. STAT. § 902.01(2)(b).

¶24 However, with no factual record developed in the circuit court as to the Juneau County Jail's administration of these rules and no factual record regarding the extent of Reyes's visits with medical professionals, we decline to take judicial notice of these rules or to consider an argument based on them.[8] Accordingly, because Reyes has not sufficiently demonstrated a resulting collateral consequence and because the resolution of this issue will have no practical effect on the underlying controversy, the issue is moot.

¶25 Reyes further argues that even if the issue is moot, various exceptions apply that warrant our consideration of this issue on the merits. Reyes

---

[8] Indeed, as to the jail's administration of such rules, the Sheriff's Office has attached to its respondent's brief an affidavit from the captain of the Sheriff's Office, who is in charge of the Juneau County Jail. In this affidavit, the captain avers that it is not mandatory that Reyes pay such expenses but is instead discretionary, and that in its discretion, the Sheriff's Office has not charged or attempted to charge Reyes for any of the costs related to her medical treatment and that it will not do so in the future. In response, Reyes argues that we may not consider this affidavit because it was not part of the circuit court record. We agree with Reyes and refer to the affidavit only to further show that we lack a developed factual record as to the jail's administration of its rules, making judicial notice of these rules inappropriate.

10

argues that the issue presented is of great public importance, comparing this situation to the COVID epidemic and the public debate over vaccine mandates. She also argues that the issue in this case is likely to arise again and that a decision by this court would alleviate uncertainty. In support, Reyes provides statistics regarding the number of incarcerated people in Wisconsin and cites sources for the contention that incarcerated individuals are more likely to suffer from any number of medical issues and mental health disorders. She also notes that the State and Sherriff's Office provide multiple bases to support their position that the emergency medical treatment order was lawful, which she contends further demonstrates the legal uncertainty surrounding this issue. Finally, she argues that the issue will likely be repeated and will almost always evade review,[9] given the number of incarcerated individuals in Wisconsin, their greater risk of mental illness and infectious disease, and that treatments may be accomplished quickly.

¶26     What Reyes fails to acknowledge, however, is the very narrow and fact-specific situation that generated the petition and emergency medical treatment order in this case. The record shows that Reyes was suffering from a mental health issue to such an extent that her counsel, after visiting her in the jail, raised

---

[9] The parties dispute the scope of this exception. The State argues that Reyes misunderstands the "capable of repetition, yet evading review" exception, citing *Portage County v. J.W.K.*, 2019 WI 54, ¶30, 386 Wis. 2d 672, 927 N.W.2d 509, for the proposition that this exception "is limited to situations involving a reasonable expectation that the *same* complaining party would be subjected to the *same action* again." *Id.* (internal quotation marks and quoted source omitted). The State argues that this exception is inapplicable to Reyes because Reyes makes no argument that she will be subject to the same action again. In her reply, Reyes concedes the point, but then in her supplemental brief, Reyes states that, based on *Outagamie County v. Melanie L.*, 2013 WI 67, ¶80, 349 Wis. 2d 148, 833 N.W.2d 607, her prior concession was "inappropriate" and that we should instead rely on her broader interpretation of the exception set forth in her brief-in-chief. We need not decide the scope of this exception because under either interpretation, we conclude that this exception does not compel our review of the moot issue here.

the issue of competency and the circuit court ultimately committed her to the Department of Health Services for treatment. At the same time, Reyes was also suffering from a life-threatening infection that was treatable through antibiotics, which Reyes refused to take. We question Reyes's assertions as to the likelihood of such a fact-specific situation arising again and Reyes's comparison to the COVID epidemic. *See* ***J.W.K.***, 386 Wis. 2d 672, ¶30 (declining to apply mootness exceptions to a fact-specific issue). Moreover, to the extent that this issue may arise again, it would be better to address it in the context of a live controversy with a more fully developed factual record. As with the involuntary medication order, we conclude that the emergency medical treatment order does not provide the type of "exceptional circumstances" that would compel us to deviate from our general practice of declining to address moot issues.

## CONCLUSION

¶27    We conclude that the issues pertaining to the involuntary medication order and the emergency medical treatment order are moot and that no exceptions to mootness apply. Accordingly, we dismiss these appeals.

*By the Court.*—Appeals dismissed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.